**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 16, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.W.**

**No. 20-0740** (Jackson County 19-JA-30)

## MEMORANDUM DECISION

Petitioner Father S.M., by counsel Ryan M. Ruth, appeals the Circuit Court of Jackson County's August 25, 2020, order terminating his parental rights to A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Erica Brannon Gunn, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights because he substantially complied with services below.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2019, the DHHR filed an abuse and neglect petition based on substance abuse, untreated mental health issues, and unsanitary conditions in the home. According to the petition, one of petitioner's neighbors contacted law enforcement after the mother came to the neighbor's residence with the child and began talking about "wild animals in the walls and bacteria coming from the ceiling in the room that she was staying in." The neighbor reported that the fifteen-month-old child was underdressed, wearing only a t-shirt and diaper despite the fact that it was thirteen degrees Fahrenheit at the time. The neighbor also reported that petitioner and the mother had been acting strangely for approximately six months and engaging in behavior that the petition asserted was indicative of methamphetamine abuse. The mother's half-brother also

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

reported observing drug paraphernalia in the home and that the mother abused a wide variety of drugs. While the half-brother was in the home, the mother told him "that there were dust particles, radiation and bacteria coming out of the ceiling and going into their bodies." The half-brother also indicated that the mother stated that she was going to kill herself, a claim that law enforcement investigated. Upon arriving at the home, law enforcement observed animal feces and urine throughout the residence, in addition to large piles of trash and clothing. The home was also without heat, resulting in petitioner using two electric heaters to warm the residence. Law enforcement also observed that the child's crib was covered with plastic sheeting, similar to an oxygen tent, which created a suffocation risk. The DHHR further alleged that a maternal uncle took the child to a doctor's appointment, during which he learned that the child had not received shots since birth, suffered from lice, and an x-ray revealed a spot on her lung from a chest cold.

Following the petition's filing, petitioner stipulated to his failure to protect the child and was adjudicated based upon this admission. He further moved for a post-adjudicatory improvement period, which the circuit court granted by order entered in April of 2020. Thereafter, the matter progressed with petitioner under the terms of the improvement period until the guardian eventually filed a motion to revoke petitioner's improvement period due to his noncompliance and to terminate his parental rights. Over two days in August of 2020, the circuit court held dispositional hearings to address these motions, during which a Child Protective Services ("CPS") worker testified to having arranged for petitioner to participate in parenting and adult life skills services, random drug screens, counseling, a batterer's intervention program[2], and supervised visits with the child, among other services. According to the CPS worker, petitioner's compliance with these services was sporadic, as he experienced periods where he "didn't show up for . . . drug screens [and] didn't contact the providers." The CPS worker was unequivocal that petitioner did not complete all the services required of him during the improvement period. The witness also indicated that although petitioner mostly complied with his parenting and adult life skills services, he did not apply what he learned to his parenting. A witness from the local day report center testified to petitioner's multiple missed drug screens, although the witness did qualify that because petitioner presented work excuses that those missed screens were not considered violations. However, the worker further indicated that petitioner's compliance was "back and forth over the past year," with petitioner alternating between compliance "and then noncompliance, and the[n] half-compliance." The worker also testified that petitioner was not compliant with his batterer's intervention program, having only recently increased his compliance and having not completed the program during his extended improvement period. A third provider testified that even if petitioner were afforded more time under his improvement period that it would not be helpful in terms of helping him regain custody of the child, given that petitioner already received services for a longer period than is usually allotted and failed to make sufficient improvement.

---

[2]According to the docket sheet for the matter, an amended petition was filed in January of 2020. Petitioner did not, however, include the amended petition in his appendix. Nonetheless, the record shows that, at disposition, the parties discussed petitioner's failure to complete the batterer's intervention program "or kind of anger management regarding . . . the domestic violence allegations in the petition." Further, on appeal, petitioner does not dispute that he was required to complete the batterer's intervention program as a term and condition of his improvement period and/or case plan.

When the parties reconvened for the second dispositional hearing, petitioner was not present, having notified his counsel earlier in the day that he was ill. Petitioner's counsel requested a continuance, which the circuit court denied. During this hearing, a witness indicated that petitioner had not visited the child for a long period despite the fact that he was eligible to attend visits. According to the witness, petitioner missing these visits negatively affected the child. The witness also indicated that petitioner did not demonstrate a bond with the child. The witness further corroborated the testimony of several other witnesses that petitioner was unprepared to have the child returned to his custody. Based upon this evidence, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare. As such, the court terminated petitioner's parental rights to the child.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

According to petitioner, he believes that he made sufficient improvement to justify the return of the child to his care based on his assertion that he was largely compliant with services when his employment did not present a conflict with his participation. However, petitioner fails to address the fact that multiple providers testified to the contrary, given that he failed to complete all of the services required of him and also failed to incorporate the skills he learned through his limited participation. While it is true that petitioner remained drug free during the improvement period, the record nonetheless shows that he was unsuccessful in his completion of many of the other required terms of his improvement period. As petitioner correctly points out,

> "[a]t the conclusion of the improvement period, the court shall review the performance of the parents in attempting to attain the goals of the improvement

---

[3]The mother's parental rights were also terminated. The permanency plan for the child is adoption in the current foster home.

period and shall, in the court's discretion, determine whether the conditions of the improvement period have been satisfied and whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child." Syl. Pt. 6, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991).

Syl. Pt. 3, *In re J.G.*, 240 W. Va. 194, 809 S.E.2d 453 (2018). Here, petitioner fails to recognize that West Virginia Code § 49-4-610(4)(A) requires that when a parent is granted an improvement period, the parent "shall be responsible for the initiation and completion of all terms of the improvement period." While petitioner may have possessed valid work excuses for certain services, he nonetheless was required to comply with those services and complete the same. Petitioner's failure to complete those services designed to remedy the conditions of abuse and neglect is attributable solely to his failure to accept his responsibility for their completion. This Court has instructed that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Therefore, even if petitioner had been fully compliant with services, which he was not, the court would have still been required to consider the child's best interests in determining the appropriate disposition below. Given that the evidence established that petitioner had not remedied the conditions of abuse and neglect at issue, it is clear that termination was appropriate.

Further, based on this same evidence, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. According to West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Given the uncontested fact that petitioner failed to complete the required services to correct the issues of abuse and neglect, this finding was clearly not in error. Similarly, the circuit court's finding that the child's welfare required termination of petitioner's parental rights was supported by the testimony from various providers that returning the child to petitioner's care was unsafe. Pursuant to West Virginia Code § 49-4-604(c)(6), circuit courts are permitted to terminate parental rights upon these findings. Further, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

4

Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the circuit court's termination of petitioner's parental rights.[4]

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 25, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: March 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

[4]In support of this assignment of error, petitioner also, in one sentence, asserts that he "finds it troubling" that the circuit court denied his motion for a continuance of the final dispositional hearing and that the denial prevented him from being heard or otherwise presenting evidence. Petitioner acknowledges, however, that this aside was "not set forth as an assignment of error." This is in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which requires that arguments be organized "under headings that correspond with the assignments of error." That rule further requires that a petitioner cite to authorities relied on. Given that petitioner failed to set forth this argument as a separate assignment of error with its own argument in support and authorities relied on, we decline to address it on appeal.